**ADAMS DAIRY COMPANY et al.,**
**Plaintiffs,**

v.

**NATIONAL DAIRY PRODUCTS COR-**
**PORATION et al., Defendants.**

Nos. 11994–1, 12028–1, 12588–1, 12771–1, 12909–1, 12910–1, 14916–1, 15032–1, 15037–1, 15386–1, 16933–1, 16939–1 and 16960–1.

United States District Court
W. D. Missouri, W. D.

Oct. 24, 1968.

---

10. Coke v. United States, 280 F.Supp. 97 at 106 (1968).

Harry P. Thomson, Jr., Robert R. Raymond and George Leonard, William A. Collet, Kansas City, Mo., for Adams Dairy Company and others.

John R. Cleary, Kansas City, Mo., for Juanita Duggins and others.

William H. Sanders and William W. LaRue, Kansas City, Mo., for Frank Bott, and others.

James Wheeler, Keytesville, Mo., and Duke Ponick, Jr., Kansas City, Mo., for Leroy Arnsperger and Helen Arnsperger.

John C. Dods, Kansas City, Mo., for Freddy Powell Meyer.

Martin J. Purcell, James C. Mordy, John E. Besser, Kansas City, Mo., Richard W. McLaren, David L. Aufderstrasse, Chicago, Ill., for National Dairy Products Corp.,

Joseph J. Kelly, Jr., Howard F. Sachs, Kansas City, Mo., Joseph A. Greaves, Chicago, Ill., E. Clark Davis, New York City, for Borden, Inc.

Roy P. Swanson, John C. Thurlo, John J. Kitchin, Kansas City, Mo., William G. Wald, Omaha, Neb., Richard Whiting, Washington, D. C., for Fairmont Foods Co. and Country Club Dairy Co.

Robert D. Sandifer, Kansas City, Mo., John P. Stevens, Chicago, Ill., for Meyer Sanitary Milk Co.

Thomas E. Deacy, Jr., and John H. Ross III, Kansas City, Mo., for Beatrice Foods Co.

Charles F. Lamkin, Jr., Kansas City, Mo., appearing specially on behalf of

Foremost—McKesson, Inc. successor to Foremost Dairies, Inc. and Foremost Food Chemical Co.

## MEMORANDUM AND ORDER DENYING DEFENDANT WISE'S MOTIONS TO DISMISS OR TO QUASH SERVICE OF PROCESS

JOHN W. OLIVER, District Judge.

These cases pend on the motions of defendant Raymond J. Wise to dismiss, or, in the alternative, to quash service of process on the alleged grounds that (1) this Court lacks jurisdiction over the person of the defendant, (2) that no applicable statute or rule authorizes extraterritorial service upon him in Florida, and (3) under Article I, § 13 of the Constitution of Missouri, V.A.M.S.[1] Sections 506.500 and 506.510, RSMo, may not be construed to have retrospective operation.

All papers filed in United States of America v. National Dairy Products Corp. and Raymond J. Wise, Criminal Action No. 20542, (W.D.Mo.1961) 196 F.Supp. 155, reversed sub nom. United States v. Wise, 370 U.S. 405, 82 S.Ct. 1354, 8 L.Ed.2d 590 (1962), reversed sub nom. United States v. National Dairy Products Corp., 372 U.S. 29, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963); United States v. National Dairy Products Corp., (W.D. Mo.1964) 231 F.Supp. 663 (motions for judgment n. o. v. and new trial), aff'd. (8th Cir. 1965) 350 F.2d 321, remanded to the district court 384 U.S. 883, 86 S.Ct. 1913, 16 L.Ed.2d 995 (1966), on remand, (W.D.Mo.1967) 262 F.Supp. 447, modified (8th Cir. 1967) 384 F.2d 457, cert. den. 390 U.S. 957, 88 S.Ct. 1032, 19 L.Ed.2d 1151 (1968), are incorporated in defendant's motion by reference. The cases in which defendant Wise's present motions pend are all private treble damage antitrust actions that follow in the wake of the criminal conviction in Criminal Action No. 20542.

Service was admittedly obtained pursuant to the applicable portions of Rule 4 of the Federal Rules of Civil Procedure,[2] and Sections 506.500,[3] and 506.510, RSMo, as enacted in 1967.[4] No question is raised concerning the facts

1. Article I, § 13 of the Missouri constitution provides: "That no * * * law * * * retrospective in its operation * * * can be enacted."

2. Rule 4(d) (7) of the Federal Rules of Civil Procedure provides in part that: "Service shall be made as follows: * * * (7) Upon a[n individual] defendant * * * it is * * * sufficient if the summons and complaint are served * * * in the manner prescribed by the law of the state in which the district court is held for the service of summons or other like process upon any such defendant in an action brought in the courts of general jurisdiction of that state." Rule 4(e) provides in part that: "Whenever a statute * * * of the state in which the district court is held provides (1) for service of a summons, or of a notice, or of an order in lieu of summons upon a party not an inhabitant of or found within the state * * * service may * * * be made under the circumstances and in the manner prescribed in the statute or rule."

3. Section 506.500 provides that: "1. Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts:
 (1) The transaction of any business within this state;
 (2) The making of any contract within this state;
 (3) The commission of a tortious act within this state;
 (4) The ownership, use, or possession of any real estate situated in this state;
 (5) The contracting to insure any person, property or risk located within this state at the time of contracting.

 2. Only causes of action arising from acts enumerated in this section may be asserted against a defendant in an action in which jurisdiction over him is based upon this section. Laws 1967, p. 660, S.B. No. 130, § 1."

4. Section 506.510 provides that "1. Service of process upon any person who is subject to the jurisdiction of the courts

stated in defendant Wise's supporting affidavit that he is now and has for more than eight years been a resident of Daytona Beach, Florida; that he has never been an inhabitant or resident of Missouri; that he retired from employment by National Dairy as of December 31, 1959, and that since that date he has not been engaged in any aspect of the dairy business nor engaged in any other business activity or transacted any business of any kind in the State of Missouri. There likewise cannot be any dispute about defendant Wise's presence in Missouri prior to that time at the places reflected in the proceedings in the criminal case which are incorporated by reference in defendant Wise's pending motions.[5]

## I

We examine first defendant Wise's contentions concerning venue. He quotes Section 4 of the Clayton Act, 15 United States Code § 15,[6] and contends that a federal treble damage antitrust action against an individual defendant can only be maintained in a district in which the individual defendant "resides," "is found," or "has an agent." Although Fourco Glass Co. v. Transmirra Prods. Corp., 353 U.S. 222, 77 S.Ct. 787, 1 L.Ed. 2d 786 (1957), is not cited, defendant argues that "because of the specificity

of this state, as provided in section 506.-500, may be made by personally serving the process upon the defendant outside this state, or upon a corporation by serving the process upon a managing officer or any person or corporation who shall be designated as a registered agent by such corporation in any of the several states, and shall have the same force and effect as though the process had been served within this state.

2. The process, together with a copy of the petition, and necessary fees shall be sent to a court of record or court officer at the place where the defendant may be served with process, and may be personally served upon the defendant by the person authorized to serve process at that place.

3. An affidavit of the person serving the process shall be returned to the office of the clerk or judge from which it issued. The affidavit shall state the time, manner and place of service of the process and of the copy of the petition. The court may consider the affidavit, or any other competent evidence, in determining whether service has been properly made. Laws 1967, p. 660, S.B. No. 130, § 2."

In order that all of the 1967 Act of the Missouri legislature be apparent on the face of this memorandum opinion, we quote the final section of the Act entitled "Personal service of process outside this State." That section, Section 506.520, provides: "1. When jurisdiction over a person, firm, or corporation who is outside this state is acquired in accordance with the provisions of sections 506.500

and 506.510, the court shall have the power to render a personal judgment against such person, firm, or corporation.

2. No default judgment shall be entered until the expiration of at least thirty days after service of process. A default judgment rendered on service of process provided by sections 506.500 to 506.520 may be set aside only on a showing which would be timely and sufficient to set aside a default judgment rendered on ordinary service of process within this state. Laws 1967, p. 660, S.B. No. 130, § 3."

5. There is some discussion in defendant Wise's supporting briefs that no "minimal contacts" presently exist in regard to him. There can be no doubt that sufficient contacts existed at the time plaintiffs alleged causes of action arose to make any question raised in regard to due process requirements frivolous. Defendant Wise incorporated in his motion by reference all the proceedings in Criminal Action 20542. Reference to the reported cases concerning that action above cited reveal defendant Wise's activity in Missouri.

6. "Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee." United States Code 15, § 15.

of the Clayton Act venue provisions as to individuals, the general venue statute can have no application."

■ It is at least arguable that venue over defendant Wise could be said to be present under Section 4 of the Clayton Act alone. The Court of Appeals for the Eighth Circuit is committed to the general proposition that venue requirements are to be measured at the time the cause of action arose rather than at the time the complaint is filed. See Farmers Elevator Mut. Ins. Co. v. Carl J. Austad & Sons, Inc., (8th Cir. 1965) 343 F.2d 7 at 12, and Great American Ins. Co. v. Louis Lesser Enterprises, Inc., (8th Cir. 1965) 353 F.2d 997 at 1001.

The rationale of the Eighth Circuit's rule was applied to the federal antitrust venue question presented to the Ninth Circuit in Eastland Construction Co. v. Keasbey and Mattison Co., (9th Cir. 1966) 358 F.2d 777 at 780. Judge Browning did so under the command of cases such as Eastman Kodak Co. v. Southern Photo Materials Co., 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684 (1927); United States v. Scophony Corp., 333 U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091 (1948); and United States v. National City Lines, Inc., 334 U.S. 573, 68 S.Ct. 1169, 92 L.Ed. 1584 (1948), which consistently place a broad construction on Congressional legislation designed to provide broader and more effective relief, both substantively and procedurally, for persons injured by violations of its antitrust policy. Appropriate projection of that theory supports the argument that defendant Wise could be said to be "found" in the Western District of Missouri at the time plaintiffs' causes of action arose, within the meaning of Section 4 of the Clayton Act.

Decision need not be based on that argument because Congress has made recent and quite fundamental amendments to the general venue statutes and because the Supreme Court recently confined *Fourco Glass Co.* to its historically significant juridical facts in Pure Oil Co.

v. Suarez, 384 U.S. 202, 86 S.Ct. 1394, 16 L.Ed.2d 474 (1966).

■ There can be no doubt that the civil antitrust actions here involved were filed in the judicial district "in which the claim arose," within the meaning of the 1966 amendment to Section 1391(b) of Title 28, United States Code. Nor can there be any doubt that "Section 1391(b) is the general venue statute governing transitory causes of action in the federal courts where jurisdiction does not depend wholly on diversity of citizenship." Denver & R. G. W. R. Co. v. Brotherhood of R.R. Trainmen, 387 U.S. 556, at 558, 87 S.Ct. 1746, at 1747, 18 L.Ed.2d 954 (1967). That case definitely determined that the amending Act of November 2, 1966 must be applied retrospectively. In that regard it was stated that "the case must be considered in light of the present form of that section, [§ 1391(b)] that is, as amended by the Act of November 2, 1966, which provides for venue not only at the place of a defendant's residence but also in the district where the claim arose." The Supreme Court reasoned that:

This amendment does not change the substantive law applicable to this lawsuit. It is wholly procedural. Absent some contrary indications by the Congress and absent any procedural prejudice to either party, the 1966 amendment to § 1391 is applicable to this suit. [Citing cases.] As this Court said in applying 28 U.S.C. § 1404(a) to pending actions, "No one has a vested right in any given mode of procedure". Ex parte Collett, 337 U.S. [55] at 71, [69 S.Ct. 944, 93 L.Ed. 1207]. [387 U.S. at 563, 87 S.Ct. at 1750].

Before *Fourco Glass Co.* was decided in 1957 little doubt was entertained but that "the venue provisions of the antitrust laws were enacted to give anti-trust plaintiffs special venue privileges in addition to those granted by general venue statutes," Auburn Capitol Theatre Corp. v. Schine Chain Theatres, (S.D.

N.Y.1949) 83 F.Supp. 872. That case expressly held that the special antitrust venue sections "were intended to facilitate the prosecution of anti-trust actions, not to replace or make unavailable general provisions" and that "anti-trust plaintiffs are not [to be] deprived of the benefits of these general venue provisions." Id. at 874.

Antitrust cases subsequent to the Supreme Court's 1965 *Pure Oil Co.* decision establish that principles stated in *Auburn Capitol Theatre Corp.* were never properly affected by *Fourco Glass Co.*[7] State of New York v. Morton Salt Co., (E.D.Pa.1967) 266 F.Supp. 570, collects the pre-*Fourco Glass Co.* cases which held the general venue statutes applicable to antitrust actions and stated that the clear implication of *Pure Oil Co.* was to resurrect all those antitrust venue decisions "which supposedly were upset by *Fourco.*"[8] In School District of Philadelphia v. Harper & Row Publishers, Inc., (E.D.Pa.1967) 267 F.Supp. 1006, Judge Kraft noted that his colleague, Judge Joseph S. Lord, III, had held in *Morton Salt* that "the general venue statutes are applicable to antitrust actions" and that, "after independent research and analysis, we are in complete accord with Judge Lord's decision and with his interpretation of the recent case of *Pure Oil Company* * * *" Id. at 1009. And still more recently, Judge John W. Lord, Jr., of the Eastern District of Pennsylvania came to the same conclusion in the Philadelphia Housing Authority v. American Radia-

tor, (E.D.Pa.1968) 291 F.Supp. 252, decided August 12, 1968, but not yet reported.

We believe those three recent Eastern District of Pennsylvania cases are soundly reasoned and we follow them and the earlier cases therein cited.

Defendant Wise's contention that the venue provisions specified in the Clayton Act are exclusive runs contrary to the implicit command of the Supreme Court in *Eastman Kodak, Scophony,* and *National City Lines, Inc.* The Clayton Act can no more be regarded as a statute for the relief of individual antitrust defendants than it can be so regarded for corporate defendants. Cf. United States v. National City Lines, supra, footnote 15 at page 581 of 334 U.S., 68 S.Ct. 1169. By its passage of the Act of November 2, 1966, Congress adopted for all federal causes of action changes in venue standards that had been advocated for antitrust actions alone at the time the venue provisions of the Clayton Act were being debated.

In *National City Lines* the Court noted in regard to the Clayton Act debate that "the basic aim of the advocates of change was to give the plaintiff the right to bring suit and have it tried in the district where the defendant had committed violations of the Act and inflicted the forbidden injuries." Id. at 583, 68 S.Ct. at 1175. Footnote 20 in that case shows that Representative Dickinson wanted to establish venue "where the damage is done and where

---

7. Particular lower federal courts consistently confined *Fourco Glass Co.* to its proper patent sphere even before *Pure Oil Co.* was decided. See, Hoffman Motors Corp. v. Alpha Romeo S.P.A., (S.D.N.Y.1965) 244 F.Supp. 70 at 83, in which it was held that Section 4 of the Clayton Act did not exclusively govern the venue of antitrust actions but that such section is "supplemented by the general venue provisions of 28 U.S.C. § 1391." The consistent line of Southern District of New York cases is collected on that page, after which an argument based on *Fourco Glass Co.* is rejected. Defendant Wise, for the most part, relies

upon the few cases that erroneously construed *Fourco Glass Co.* differently. Such cases do not state the law.

8. Judge Lord cited Kaeppler v. James H. Matthews & Co., (E.D.Pa.1960) 180 F.Supp. 691, and Goldlawr, Inc. v. Shubert, (E.D.Pa.1958) 169 F.Supp. 677, from his own district as examples of the few cases which held that *Fourco Glass Co.* affected venue outside the patent field. Lipp v. National Screen Service Corp., (E.D.Pa.1950) 95 F.Supp. 66, was cited as one of the many pre-*Fourco Glass Co.* cases which was "resurrected" by *Pure Oil Co.*

the action arose." Id. at 583, 68 S.Ct. at 1175.

The fact that venue for all federal causes of action, including antitrust actions, was so established by the Act of November 2, 1966 is but a reflection of Congressional acceptance of the conditions of the modern world in which we live. The enactment of some form of long-arm service statutes by practically all state legislatures is another reflection of like acceptance by those legislative bodies. And the incorporation of such state service statutes into federal procedure by Rule 4(d) (7) is still a third recognition of the same factors.[9]

■ Courts should not, subject to constitutional limitations, attempt to thwart obvious legislative decisions to broaden venue and to adopt procedural statutes and rules which subject nonresident defendants to the jurisdiction of the courts of a particular state in which such persons caused injury. This is particularly true in regard to antitrust actions because the Congress has given every indication that the broadest sort of venue and jurisdiction is to be applicable to both public and private actions of that sort.

It would be incongruous to hold that an action may properly be brought in this judicial district against a Florida resident in regard to an automobile accident that may have occurred here but that persons injured by violations of the antitrust laws cannot bring an action to recover for their injury. We hold that Section 1391(b) establishes proper venue for both types of actions and that plaintiffs brought their antitrust actions in a proper judicial district. We turn now to defendant Wise's contention that he is not amenable to service of process.

## II

Both sides concede that defendant Wise was served with process under Sections 506.500 and 506.510, R.S.Mo. (Laws 1967, S.B. 130), quoted in footnotes 3 and 4 respectively.

It is not claimed that defendant Wise transacted any business or committed any tortious act within Missouri subsequent to the enactment of Missouri's most recent long-arm service statute in 1967. Defendant Wise argues that because of the Supreme Court of Missouri's 1963 decision in State ex rel. Clay Equipment Corp. v. Jensen, (Mo.Sup.Ct. en banc 1963) 363 S.W.2d 666, "there can be no doubt but that the Supreme Court of Missouri would similarly construe the 1967 long-arm statute to have only prospective application." That case

---

**9.** The present language of Rule 4(d) (7) came into the Federal Rules by way of the 1963 amendments. The Notes of the Advisory Committee on Rules in regard to subdivision (d) (7) stated: "Subdivision (d) (7) * * *. An important and growing class of State statutes base personal jurisdiction over nonresidents on the doing of acts or on other contacts within the State, and permit notice to be given the defendant outside the State without any requirement of service on a local State official. See, e. g. Ill.Ann.Stat., c. 110, §§ 16, 17 (Smith-Hurd 1956); Wis.Stat. § 262.06 (1959). This service, employed in original Federal actions pursuant to paragraph (7), has also been held proper. [Citing cases]. It has also been held that the clause of paragraph (7) which permits service 'in the manner prescribed by the law of the state,' etc., is not limited by subdivision (c) requiring that service of all process be made by certain designated persons. [Citing cases]." [28 U.S.C.A., Rule 4, pocket part].

In regard to subdivision (e) the Notes stated "The second sentence, added by amendment, expressly allows resort in original Federal actions to the procedures provided by State law for effecting service on non-resident parties (as well as on domiciliaries not found within the State). See, as illustrative, the discussion under amended subdivision (d) (7) of service pursuant to State nonresident motorist statutes and other comparable State statutes." [Ibid]. And "if the circumstances of a particular case satisfy the applicable Federal law (first sentence of Rule 4(e), as amended) and the applicable State law (second sentence), the party seeking to make the service may proceed under the Federal or the State law, at his option." [Ibid].

held that a 1961 "implied consent" long-arm statute (Section 351.630, R.S.Mo 1959, as amended in 1961), applicable only to foreign corporations, could not be applied retrospectively. Neither party argues that *State ex rel. Clay Equipment Corp.* is controlling as a matter of law. Indeed, both sides agree that no Missouri court has yet ruled the precise question presented in regard to Section 506.500.

### III

A threshold question is presented in regard to whether state or federal law must be applied. Defendant Wise contends that "since service upon defendant Wise has been attempted under a state statute, the interpretation of that statute and the question of whether it was intended to have retroactive application must be determined by the law of the state." Plaintiffs, on the other hand, contend that "because this is a federal question, the interpretation given to this statute by other federal courts is controlling," and, for that reason, this Court "should look to the judicial construction placed upon this statute by the State of Illinois."

Choice of law questions under Rule 4 have arisen with greatest frequency in diversity actions in which the amenability to service of process involved corporate defendants. The majority opinion of Judge Friendly and Judge Clark's dissenting opinion in Arrowsmith v. United Press International, (2nd Cir. 1963) 320 F.2d 219, and the cases cited in the comment note on that case published in 6 A.L.R.3rd 1103, reflect the early division of opinion on that question. Courts that have given consideration to the problem, and many courts did not recognize that a problem was presented, have expressed different views in regard to (a) the interplay between Rule 4(d) (3) and Rule 4(d) (7), (b) the scope of the *Erie* doctrine, and (c) the effect of federal venue statutes. See 6 A.L.R.3rd 1103 at 1118, 1122, and 1127.

■ There can be no question that today, regardless of rationale, the broad rule is that in diversity actions a federal district court can exercise personal jurisdiction over a foreign corporate defendant only to the extent that this may be done by the courts of general jurisdiction in the state in which the district court sits. That rule is presently established in nearly all the circuits. See 6 A.L.R.3rd at 1110. Certainly such is the rule of the Eighth Circuit. See Jennings v. McCall Corp., (8th Cir. 1963) 320 F.2d 64, and Simpkins v. Council Manufacturing Corporation, (8th Cir. 1964) 332 F.2d 733, for examples.

■ The relevancy of the case law that developed in regard to outstate service on corporate defendants to that applicable to service on an individual defendant demonstrates that when courts focused precise attention on service obtained on corporate defendants pursuant to Rule 4(d) (7) there was almost universal agreement from the outset that the federal district court could not exercise *in personam* jurisdiction when service was had pursuant to procedure established by a state statute unless it could fairly be said that such service would have been valid if it had been obtained in the state court. We believe such construction is applicable to both corporate and individual defendants.

Rule 4(d) (7) expressly provides that personal service on an individual defendant "is also sufficient if the summons and complaint are served in the manner prescribed * * * by the law of the state in which the service is made * * in an action brought in the courts of general jurisdiction of that state." Rule 4 (e) provides that service under the state statute may be "made under the circumstances and in the manner prescribed by the statute." The only possible way that defendant Wise can fairly be said to be amenable to process is pursuant to the procedure established in the 1967 Missouri long-arm statute, Section 506.-500, which is made available for federal use solely by virtue of the provisions in Rule 4(d) (7) and Rule 4(e).

If a state court could not acquire *in personam* jurisdiction "under the circum-

stances and in the manner prescribed" by Missouri's new 1967 statute, then it would seem obvious that federal *in personam* jurisdiction may not be so acquired. It is clear that defendant Wise's contention in regard to choice of law is sound and that the validity of the process served on defendant Wise turns on the question of whether Sections 506.500, 506.510 and 506.520, as a matter of state law, apply only prospectively or whether they also apply retrospectively.

The Supreme Court of the United States did not have this precise question presented in United States v. First National City Bank, 379 U.S. 378, 85 S.Ct. 528, 13 L.Ed.2d 365 (1965), but its statement that "The Federal Rules of Civil Procedure by Rule 4(e) and Rule 4(f) allow a party not an inhabitant of the State or found therein to be served with a summons in a federal court in the manner and under the circumstances prescribed by a state statute," Id. at 381, 85 S.Ct. at 530, and its citation of United States v. Montreal Trust Co., (S.D.N.Y. 1964) 35 F.R.D. 216, clearly indicates that there can be no real doubt about the question. The latter case did relate to the question presented and we believe the Supreme Court's express approval of that soundly reasoned case is significant.

### IV

■ The fact that Missouri has a constitutional provision prohibiting the passage of a retrospective law (Article 1, Sec. 13 of 1945 Constitution of Missouri, quoted in footnote 1) would not prohibit the retrospective operation of Section 506.500 if that statute is held to deal only "with procedure or the remedy." State ex rel. Clay Equipment Corp., supra, 363 S.W.2d at 669. See also the Missouri cases there cited.[10] The Supreme Court of Missouri applies the same standards applied by the Supreme Court of the United States to due process questions presented under the due process clauses contained in both the Missouri and federal constitutions. We therefore need look only to the Supreme Court of the United States cases in regard to the due process questions raised by defendant Wise's motions.

■ McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), establishes that there are no due process barriers that would militate against the retrospective application of Missouri Section 506.500 to causes of action that arose before the enactment of that statute in 1967. If the statute is to be labeled "remedial" and one that relates to "procedure" alone as a matter of state law, there is nothing in the due process clauses of the state and federal constitutions that would prohibit Section 506.500 from being applied retrospectively because a statute so construed does "nothing more than to provide [plaintiff] with [another] forum to enforce whatever substantive rights" the plaintiff might have against the defendant. 355 U.S. at 224, 78 S.Ct. at 202. *McGee* made clear that no defendant has a "vested right not to be sued" in a particular jurisdiction. Ibid.

See also United States v. First National City Bank, supra, in which it was apparent that the "cause of action arose, the complaint was filed, and the temporary injunction was issued before the New York statute became effective." (379 U.S. at 382, 85 S.Ct. at 530). The Supreme Court clearly indicated that valid personal service could be made under a subsequently enacted New York long-arm statute for the reason that "the New York Court of Appeals has * * * indicated that where the suit is instituted *after* the effective date of the statute, the statute will normally apply to transactions occurring *before* the effective date." Ibid, (emphasis the Supreme Court's).

■ We quite agree with defendant Wise's contention that "the task of this Court, as a federal court, is to decide this case (pending a decision by the Mis-

---

10. Chief Judge Arraj disposed of a similar argument based on a similar Colorado constitutional provision in Smith v. Putnam, D.Colo.1965, 250 F.Supp. 1017.

souri courts) upon the basis of whether the Missouri Supreme Court would hold that Section 506.500 was intended by the Missouri legislature only to have prospective application." We must look to all data to which the Missouri courts would look when and if the question now presented to this Court might later be presented to the Supreme Court of Missouri.[11]

Examination of all appropriate data convinces us that the Supreme Court of Missouri would consider Missouri's new Section 506.500 as merely one more exercise of its clear constitutional power to acquire personal jurisdiction over persons served with process outside its territorial boundaries. We believe that the Missouri courts will readily recognize that when the Missouri legislature enacted Section 506.500 in 1967 it was taking action consistent with that taken by many other states since the landmark decisions of the Supreme Court in International Shoe Co. v. State of Washing-

ton, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).

The rapid proliferation of statutes similar to Missouri's Section 506.500 is reflected by the statutes collected and the cases noted in the annotations published in 78 A.L.R.2d 397, entitled "States' power to subject nonresident individual other than a motorist to jurisdiction of its courts in action for tort committed within state" and in 19 A.L.R. 3d 138 (1968), entitled "Retrospective operation of state statutes or rules of court conferring *in personam* jurisdiction over nonresidents or foreign corporations on the basis of isolated acts or transactions." The statutes there cited and the cases there discussed would certainly be appropriately considered by the Missouri courts when eventually called upon to determine whether Section 506.-500 is to be applied retrospectively.[12]

11. In so doing we must attempt to avoid the mistake once made by this Court when it made a too literal application of what it believed was an apparent congenital hostility on the part of Missouri courts toward procedural statutes which would make nonresident defendants amenable to the service of process issued by a Missouri court. See Brooks v. National Bank of Topeka, (W.D.Mo.1957) 152 F.Supp. 36, in which Section 506.210 of the Missouri Statutes was held to be unconstitutional because of expressions made by the Supreme Court of Missouri in Harris v. Bates, (Mo.Sup.1954) 364 Mo. 1023, 270 S.W.2d 763, and Crump v. Treadway, (Mo.Sup.1955) 276 S.W.2d 226.

This Court was reversed by the Eighth Circuit in 251 F.2d 37 because the Court of Appeals determined that "neither of said [Supreme Court of Missouri] opinions indicates any hostility to the public policy underlying the enactment of the long arm statute." In State ex rel. Sullivan v. Cross, (Mo.Sup. en banc 1958) 314 S.W.2d 889, the Supreme Court of Missouri agreed with and followed the Eighth Circuit opinion.

We believe that some of the comments in Professor Anderson's article entitled "Personal Jurisdiction over Outsiders," 28 Missouri L.Rev. 336, 380 (Summer

1963), to the effect that the trend in Missouri law in 1963 appeared to be "opposed to the general trend in American law, rather than merely dragging along behind it" reflects a misreading of some of the Missouri cases similar to that reflected in the district court opinion in *Brooks*. We know of no area of law in which the Supreme Court of Missouri has ever opposed the general trend of American law; indeed, in numerous areas that court has earned over the years a position of distinct leadership among the courts of the land. We have taken judicial note of this fact on many occasions. See, for example, White v. Swenson, (W.D.Mo. en banc 1966) 261 F.Supp. 42.

12. The related annotation in 19 A.L.R.3d 13 (1968) entitled "Products Liability; *in personam* jurisdiction over nonresident manufacturer or seller under long-arm statutes" would undoubtedly also be considered. That annotation also discussed the retrospective application of statutes and rules of court which establish procedures under which extraterritorial process may be served on manufacturers or sellers.

The speed with which the various states are enacting new single act statutes is reflected by the number of recent decisions dealing with such statutes. The

Examination of statutes and rules basically similar to Missouri's Section 506.500 and of the cases construing and applying them is convincing data that the Missouri courts will view Section 506.500 in the appropriate perspective of what has happened in relatively recent years to concepts of jurisdiction that were once associated with the leading case of Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1877). So far as retrospective application of single act statutes such as Section 506.500 is concerned, it is reasonable to assume that the Missouri courts will examine, as have many other courts, both state and federal, appropriate law review comments such as that published in 63 Columbia L.Rev. 1103 (1963) entitled "Retroactive Expansion of State Court Jurisdiction over Persons." That article stated in its opening paragraph that:

The bases of judicial jurisdiction over persons have undergone considerable evolution since the time Mr. Justice Holmes was able to say, however accurately, for a unanimous Supreme Court that "the foundation of jurisdiction is physical power." Jurisdiction can now be based not only upon the classical bases—presence, consent, appearance—but also upon conduct such as transacting business, contracting to supply goods, causing tortious consequences, owning property, and insuring persons and property within the state. The prototypic Illinois statute, enacted in 1955 and subsequently adopted in a number of states, was the first comprehensive legislative attempt to occupy the jurisdictional "enclaves" recognized by the landmark decision in International Shoe Co. v. [State of] Washington, Approval by the American Bar Association and the National Conference of Commissioners on Uniform State Laws of the Uniform Interstate and International Procedure Act promises further proliferation of such legislation. While the pertinent Supreme Court decisions and an increasing number of commentators indicate that the nub of jurisdiction is reasonableness considered in the light of "traditional notions of fair play and substantial justice," definition of these vague terms and their application to jurisdictional statutes have been largely the work of the lower federal and state courts.

Whether personal jurisdiction should be predicated upon conduct that preceded enactment is one of the problems presented by these statutes. Little guidance is afforded by legislative and judicial action thus far; the statutes have seldom dealt explicitly with the question and, in construing them, the courts have disagreed in both reasoning and result.

The Missouri courts are unquestionably familiar with the fact that the resolution of whether a particular statute is to be applied retrospectively or only prospectively involves the determination of a broad public policy for the state. Such determination if made by a court rather than the legislature, is not infrequently screened by conclusory judicial language that makes use of the labels involved in the "substantive,"—"procedural" dichotomy which reflects the result of a particular court's public policy determination but does not explain the reason why such policy was established. The comment in 63 Columbia L. Rev. at 1121 appropriately stated that "the purpose of modern jurisdictional statutes is to expand the state's judicial jurisdiction over persons to the constitutionally permissible limits. The state's vital interest in better protecting its citizens is promoted by furnishing a convenient local forum for suits against defendants who have some significant relationship with the state." It added

October 1, 1968 issue of United States Law Week, for example, notes the decision of the Sixth Circuit in Southern Machine Co. v. Mohasco Industries, Inc., 6 Cir., 401 F.2d 374, applying Tennessee's new statute and the decision of the United States District Court for Connecticut in Scher v. H.M.H. Publishing Co., D.C., 289 F.Supp. 917, applying the new single act statute of that state.

that "ordinarily, the interests of the state are sufficiently important to support retroactive expansion of personal jurisdiction.

That comment noted, however, that

Cases involving retroactive expansion of the bases of judicial jurisdiction over persons have produced inconsistent results although the courts have employed the same rules in dealing with similar statutes. Retroactivity has been sanctioned on the ground that jurisdictional provisions involve only modes of procedure in which there can be no vested rights. By contrast, prospectivity has often been required to avoid alteration of "substantive" or "vested" rights and to obviate the apparently anomalous retroactive imputation of consent and agency.

The situation is further complicated by the fact that "although numerous decisions regarding retroactive expansion of personal jurisdiction have been rendered, most opinions are of little use because they * * * merely articulated a result in the conclusory language of retroactivity." And, as is proper for authors of law review articles, it was stated that "the contrariety of result displayed by the cases and the absence of the discriminating analysis of jurisdictional statutes necessary to reasoned-appraisal of retroactivity demonstrate that the courts should no longer rely upon deceptively simple rules and terminology of vague and varying content." We are confident, however, that the Supreme Court of Missouri will take advantage of the wealth of legal data that has accumulated in the five years since its decision in *State ex rel. Clay Equipment Corp.* and that its determination of whether or not Section 506.500 should be applied retrospectively will be made in light of principles that are presently more clearly established than they were as recently as five years ago.[13]

### V

It is of importance to note that Section 506.500 is a type of statute which many courts believe to be entirely different from the type considered by the Supreme Court of Missouri in *State ex rel. Clay Equipment Corp.* The question presented does not require this Court to determine whether the distinction made is valid.[14] It is our duty to base our forecast on whether the Supreme Court of Missouri would recognize and make application of the distinction which other courts have made, particularly in instances in which the Supreme Court of Missouri has accepted the reasoning of courts that have later recognized and applied the "distinction" to the question here presented.

Section 351.630,[15] the 1961 foreign corporation long-arm statute involved

---

13. Compare the conflict that existed in 1963 as reflected in *Arrowsmith* in regard to the choice of law question discussed in part III above with the presently settled state of the law as reflected by the cases discussed in 6 A.L.R.3rd 1103. A similar unanimity of opinion has developed in regard to the retrospective application of single act service statutes since 1963 as is reflected by the authorities cited in 19 A.L.R.3d 138.

14. The author of the annotation in 19 A.L.R.3rd at 141, footnote 13, suggests that "the distinction seems to be a mere matter of draftsmanship." See also Chief Judge Arraj's penetrating discussion of the fictions involved in *Sawyer v. Taylor*, (D.Colo.1963) 225 F.Supp. 555 at 558–559.

15. Section 351.630, in its pertinent part, states that: "Whenever any foreign corporation authorized to transact business in this state shall fail to appoint or maintain in this state a registered agent upon whom service of legal process or service of any such notice or demand may be had, or whenever any such registered agent cannot with reasonable diligence be found at the registered office in this state of such corporation, or whenever the certificate of authority of any foreign corporation shall be forfeited, then and in every such case the secretary of state shall be irrevocably authorized as the agent and representative of such foreign corporation to accept service of any process, or service of any notice or demand required or permitted by law to be served upon such corporation."

in *State ex rel. Clay Equipment Corp.* is the type of statute which particular courts have classified as "an implied consent" statute. Section 506.500 is not; it is the type which has been classified as a "single act" statute. Section 506.-500, as distinguished from Section 351.-630, does not in any way purport to base jurisdiction on any theory of consent, implied or otherwise. Section 506.500, consistent with the modern trend of statutory draftsmanship, simply provides that the acts or transactions specified in the statute shall be the basis of *in personam* jurisdiction over nonresident individuals and foreign corporations.

There can be no doubt that a "distinction" has been recognized between an "implied consent" statute and a "single act" statute and that the trend of the recent cases dealing with questions of retrospective application of "single act" statutes have consistently utilized that distinction in order to hold a "single act" statute to be retrospective in application in spite of the fact that the same court may have earlier held an "implied consent" statute to be prospective only.

The Court of Appeals of New York neatly disposed of a number of its earlier "prospective only" decisions in footnote 4 of its 1965 decision in Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965), in which it reaffirmed its prior holding to the same effect in Simonson v. International Bank, 14 N.Y. 2d 281, 251 N.Y.S.2d 433, 200 N.E.2d 427. In deciding that the 1962 New York single act long-arm statute should be applied retrospectively it was stated in *Longines-Wittnauer Watch Co.*, that:

Since section 302 rests not on any theory of implied consent on the part of the defendant to submit to this State's jurisdiction if he commits acts herein but, rather, on New York's inherent power to exercise jurisdiction over a nonresident defendant who has the requisite minimal contacts with it (see N.Y. Advisory Comm.Rep. [N.Y.Legis.Doc., 1958, No. 13], pp.

39–41; see, also 1 Weinstein-Korn-Miller, N.Y.Civ.Prac. par. 302.04), the decisions—to which the appellants point—denying retroactive effect to statutes predicated on a theory of implied consent, such as the original nonresident motorist statutes (see, e. g., Kurland v. Chernobil, 260 N.Y. 254, 257, 183 N.E. 380; Gruber v. Wilson, 276 N.Y. 135, 140, 11 N.E.2d 568, 569), are not here in point. [261 N.Y.S.2d at 16, 209 N.E.2d at 73].

Federal district courts, when presented with the same question as that presented in this case have likewise recognized and made use of the "distinction." See, for example, Chovan v. E. I. DuPont De Nemours & Co., (E.D.Mich.1963) 217 F.Supp. 808, in which it was determined that Michigan's new single act statute should be applied retrospectively. The defendants in that case expressly relied upon *State ex rel. Clay Equipment Corp.* and other like "implied consent" cases. Judge McCree stated:

These cases may be distinguished from the instant case in that the nonresident statutes, so construed, provided that a person, upon the commission of a specified act, such as the act of a motorist entering the state, was deemed to have appointed a state official as his agent for the purpose of accepting service of process. This fictional agency relationship provided the basis for the state's jurisdiction over the nonresident. Accordingly, if the effective date of such a statute was subsequent to the motorist's entry, the statute was held not to have created a prior agency relationship which in fact did not exist.

In the instant case, the relationship which provides the basis for the state's exercise of jurisdiction over the defendant is the relationship of claimed tortfeasor and victim which relationship existed prior to the effective date of the statute, and is independent of the statute. Id. at 811.

Other recent cases are collected in 19 A.L.R.3rd 138 annotation above cited and

the rule of decision established by the recent cases is there summarized at pages 141–2 as follows:

As regards the question whether a long-arm statute is applicable, even though the act or transaction on which jurisdiction is predicated occurred prior to its effective date, a distinction has been made between statutes which provide by their terms merely that the acts or transactions specified therein shall be the basis of the jurisdiction of local courts over, or of exraterritorial service on, nonresidents or foreign corporations, and statutes, often called "implied consent" statutes, which by their terms provide that such acts or transactions are deemed to be the consent of the nonresident or foreign corporation to the appointment of a local officer as agent for the purpose of service of process. The general rule that, in the absence of a statutory provision to the contrary, statutes pertaining to procedure operate retrospectively, has been applied to long-arm statutes of the first kind. Under this view the retroactive application of such a statute is not precluded by the fact that the act or transaction upon which jurisdiction is predicated occurred prior to the effective date of the statute. On the other hand, "implied consent" statutes have generally been held not to operate retroactively so as to extend to acts or transactions occurring prior to the effective date of the statute. This rule rests on the view that neither as a matter of statutory construction nor as a matter of constitutional law is it possible to imply consent retroactively.

We turn now to recent actions and past decisions of the Supreme Court of Missouri that tend to reflect that court's probable view of the question presented.

## VI

On September 9, 1968 the Supreme Court of Missouri denied a petition for writ of prohibition which could be said to have presented the direct question whether Section 506.500 was properly applied retrospectively by the trial judge.[16] The original papers filed in the Supreme Court of Missouri show that plaintiff, a Missouri resident, brought an action against three defendants, a domestic corporation, a foreign corporation, and a resident of Wisconsin. The trial court petition alleged that the individual defendant, as an employee of both the corporate defendants, had negligently unloaded a dragline from a railroad flat car thereby injuring the plaintiff. Plaintiff alleged that the "torts and acts of omission of negligence * * were committed by the defendants in Scott County, Missouri," within the territorial jurisdiction of the trial court.

Service of process on the nonresident individual defendant was obtained in Wisconsin pursuant to Sections 506.500 and 506.510. He moved to quash the service and to dismiss for want of jurisdiction, alleging that he was a nonresident served only in Wisconsin, that the cause of action occurred on March 19, 1963, that Section 506.500 did not become law until October 13, 1967, and that "the said law was prospective in nature and was not such an act as to be retroactive." The Honorable Marshall Craig, a distinguished and experienced Missouri state trial judge, denied the motion.

On August 23, 1968 the individual defendant filed a petition for writ of prohibition in the Supreme Court of Missouri setting forth the facts as stated. In his supporting brief the individual defendant stated that:

As authority for the proposition that the said Section 506.500, R.S.Mo.1967 (which became effective on October 13, 1967), has no retrospective effect, Relator invites this Honorable Court's attention to the en banc decision of this Court in the case of *State ex rel. Clay Equipment Corporation, Relator, vs. Honorable Richard C. Jensen, Judge, Division 13 of the Circuit Court of*

---

16. Burdeau v. Craig, Judge, No. 54,135, unreported proceeding for writ of prohibition in the Supreme Court of Missouri.

*Jackson County, Missouri, Respondent,* reported at 363 S.W.2d 666.

The Supreme Court of Missouri's unreported order of September 9, 1968 in Burdeau v. Craig, No. 54135, stated in full the following:

Now at this day, on consideration of the petition for a writ of prohibition herein to the said respondent, it is ordered by the court here that the said petition be, and the same is hereby denied.

The Supreme Court of Missouri did not assign any reasons for its action.

Plaintiffs contend that the action of the Supreme Court of Missouri in *Burdeau* is "clear authority that the Supreme Court [of Missouri] has ruled that the Missouri long-arm statute in question here, 506.500, is to be applied retroactively." We do not agree.

■ Statements in State ex rel. Houser v. Goodman, (Spr.Ct.App.1966) 406 S.W.2d 121 at 124, indicate that both Missouri trial courts and trial lawyers sometimes attribute greater impact than is warranted to the unreported denial of applications for writ of prohibition by a Missouri appellate court, at least when application has been made in an attempt to review a trial court's regulation of discovery. The courts of Missouri have not articulated what weight, if any, should be given a denial of an application for prohibition in which a clear jurisdictional question is presented in connection with an apparently undisputed factual situation.

■ The Supreme Court of the United States has reiterated time and time again that the denial of a writ of certiorari imports no expression of opinion on the merits. See, for a single example, Brown v. Allen, 344 U.S. 443 at 491, 73 S.Ct. 397, 97 L.Ed. 469 (1953), in which Mr. Justice Frankfurter collects some of the cases and explains the reasons for the rule. We believe that not dissimilar factors exist so far as the practice of a Missouri appellate court in considering any petition for a discretionary writ is concerned and that, absent a clear statement from the courts of Missouri to the contrary, we should not treat the Supreme Court of Missouri's denial of the writ of prohibition in Burdeau v. Craig as a decision on the merits of Judge Craig's decision or in any way was a controlling declaration of Missouri law.

At the time of oral argument we suggested that we were strongly inclined toward the view that a denial by a Missouri appellate court of an application for a discretionary extraordinary legal remedy should be viewed in much the same manner as a denial of certiorari by the Supreme Court of the United States. Developments since oral argument convince us that our tentative view was correct.

Since oral argument counsel for defendant Wise learned that the Honorable Tom J. Stubbs, another distinguished and experienced state trial judge, had granted a motion to dismiss and to quash under circumstances substantially similar to those under which Judge Craig had acted in Burdeau v. Craig. The Kansas City Court of Appeals, in an unreported order in which no reasons for its action were stated, refused to grant a petition for mandamus.[17]

17. Titus v. Stubbs, Judge, No. 25156, an unreported proceeding for writ of mandamus in the Kansas City Court of Appeals. The petition for mandamus in the Kansas City Court of Appeals reflects that the petitioner contended that "Section 506.500, R.S.Mo. is a procedural statute and it was the intent of the legislature that it be given retroactive effect." Judge Stubbs' order granting defendant's motion to quash service, like that of Judge Craig's, did not state any reasons to support his decisions. The briefs filed in the trial court show that the defendant in the trial court had placed principal reliance on *State ex rel. Clay Equipment Corp.* Plaintiffs countered with the cases upon which plaintiff relies in this case, including Nelson v. Miller, 11 Ill.2d 378, 143 N.E.2d 673. The Kansas City Court of Appeals simply advised counsel by letter that the petition was denied. No reasons were assigned for that action. The unreported action of the Kansas City Court of Appeals in Titus v. Stubbs, Judge, may be said to be favorable to

One could argue that the action of the Kansas City Court of Appeals could be said to reflect a view of an intermediate Missouri appellate consistent with defendant's Wise's basic position. We believe, however, that any contention that the apparently conflicting view of the Supreme Court of Missouri and that of the Kansas City Court of Appeals should be resolved in favor of the highest court is untenable for the reason that we do not believe that the denial of the respective petitions for extraordinary relief in either court can fairly be said to reflect the deliberative view of either. We simply do not believe that the orders of either Missouri appellate court can be said to accurately reflect the view that either court might take after full consideration of the question presented on the merits, aided, as this Court has been aided, by excellent briefs and full oral argument of counsel which focus precise attention on the developments in the law of Missouri and elsewhere since *State ex rel. Clay Equipment Corp.* was decided.[18]

Study of the cases upon which the Supreme Court of Missouri relied in *State ex rel. Clay Equipment Corp.* in deciding that Section 361.630 should be applied prospectively only (plus a view of how those cases have since been treated) and a study of more recent cases decided by the Supreme Court of Missouri leads us to a firm conviction that the rationale of *State ex rel. Clay Equipment Corp.* will not be applied by that court in a case involving the construction of Section 506.500 in which a full review is afforded by the Supreme Court of Missouri.

## VII

In *State ex rel. Clay Equipment Corp.* the late Judge Dalton relied on three cases to support the determination that Section 351.630 could not be applied retrospectively. The Arkansas case of Gillioz v. Kincannon, (Ark.Sup.Ct. 1948) 213 Ark. 1010, 214 S.W.2d 212, one of the three relied upon by *State ex rel. Clay Equipment Corp.*, involved a 1947 Arkansas "implied consent" statute. Subsequent to that decision the Arkansas legislature in 1961 passed a new statute in which jurisdiction was extended over persons resident at the time the cause of action arose but who had thereafter left the state. The new statute was construed in Harrison v. Matthews, (Ark. Sup.Ct.1962) 235 Ark. 915, 362 S.W.2d 704. That court had no difficulty in finding that:

Act 54 did not create new substantive rights. Whatever cause of action this appellant now has was already in being when the statute was adopted. Its only effect was to permit a plaintiff to obtain personal jurisdiction in the courts of this state

plaintiffs. As stated in the text, the action of neither is of controlling significance.

18. During oral argument our attention was also called to the unreported action of the Honorable John H. Lucas, still another distinguished and experienced Missouri trial judge, in Virginia Swope v. George R. Moser and Joseph H. Printz, No. 672789, in the Circuit Court of Jackson County, Missouri, in which a defendant's motion to quash was granted but defendant's motion to dismiss was denied. No relief in a Missouri appellate court was sought in connection with that case by either party.

Considerations implicit in Vanderbark v. Owens-Illinois Glass Co., 311 U.S. 538, 61 S.Ct. 347, 85 L.Ed. 327 (1941), and explicitly stated in regard to the analogous *Erie* situation in King v. Order of United Commercial Travelers, 333 U.S. 153 at 160–162, 68 S.Ct. 488, 92 L.Ed. 608 (1948), make it clear that we cannot decide the question presented by counting the noses of Missouri state trial judges who have decided the same question in the discharge of their duty to forecast the ultimate controlling decision of the Supreme Court of Missouri. On the very practical side, only three Missouri trial court decisions have been called to our attention. As suggested in *King*, "for every [trial court] decision cited by counsel there might be a dozen adverse decisions outstanding but undiscovered." It is for that reason that, generally speaking, the federal courts may not look to state trial court decisions as controlling authoritative expositions of state law.

over a nonresident defendant. The act is procedural in nature, merely providing in this instance a new forum for the enforcement of existing rights. Being procedural, the act applies to all cases filed after it became effective.

In regard to its earlier and apparently inconsistent decision in *Gillioz* the court said "that decision is clearly distinguishable from the case at bar." Id. at 705. The Arkansas court noted the "distinction" discussed above and pointed out that an "implied consent" statute was construed in *Gillioz* whereas the new 1961 statute construed in *Harrison* was a "single act" statute. In Safeway Stores, Inc. v. Shwayder Brothers, Inc., (Ark. Sup.Ct.1964) 238 Ark. 768, 384 S.W.2d 473, a 1963 Arkansas single act statute substantially similar to Missouri's Section 506.500 was held to "deal only with procedure" and therefore to be applied retrospectively in accordance with the Harrison case.[19]

We cannot help but believe that the Supreme Court of Missouri, at the very least, would not again rely upon the rationale of *Gillioz*, but rather would distinguish that case in the same manner that the Supreme Court of Arkansas has twice done since *State ex rel. Clay Equipment Corp.* Indeed, we believe it not unlikely that the Supreme Court of Missouri would rely upon the two most recent Arkansas cases as a basis for distinguishing *State ex rel. Clay Equipment Corp.* in a case in which the retrospective application of Section 506.500 is presented.

The second case relied upon in *State ex rel. Clay Equipment Corp.* was Rozell v. Kaye, (S.D.Tex.1962) 201 F.Supp. 377. The construction given the 1959 Texas "implied consent" statute by that district court was unique in that it reflected the refusal of a district court to follow a prior ruling of its controlling Court of Appeals. Study of the appropriate Fifth Circuit cases demonstrates that before Judge Garza had decided Rozell v. Kaye the Court of Appeals for the Fifth Circuit had affirmed District Judge Ingraham's retrospective application of the same Texas statute. See Lone Star Motor Import, Inc. v. Citroen Cars Corp., (S.D.Tex.1960) 185 F.Supp. 48. In its decision reported in 288 F.2d 69 (1961), the Fifth Circuit took note of Judge Garza's unusual action in still a later case and stated that Rozell v. Kaye could only be attributed to the "strong convictions" of Judge Garza. See Muchard v. Berenson, (5th Cir. 1962) 307 F.2d 368 at 370, in which the Fifth Circuit so described Judge Garza's feelings and in which it again held that the Texas statute should be applied retrospectively.[20]

We cannot believe that the Supreme Court of Missouri would again place reliance upon a district court opinion discredited before it was written, and repudiated after it was decided. We are confident that counsel did not direct the Supreme Court of Missouri's attention to the other federal court decisions concerning the retrospective application of the Texas statute at the time *State ex rel. Clay Equipment Corp.* was decided.

Hill v. Electronics Corp. of America, (Iowa Sup.Ct.1962), 253 Iowa 581, 113 N.W.2d 313, was the third case relied upon by *State ex rel. Clay Equipment Corp.* A 1959 Iowa "implied consent" foreign corporation long-arm statute was there involved. What was said in that case was sufficient to indicate to United States District Judge McManus that the Iowa courts would likely hold that a 1963 Iowa amended "implied consent" foreign corporation statute would be construed to apply retrospectively. See Cedar Rapids Community School Dist. v. R. F.

19. In regard to *Gillioz* the court in *Safeway Stores, Inc.* said: "Appellee's contention that this case is controlled (in its favor) by Gillioz v. Kincannon, 213 Ark. 1010, 214 S.W.2d 212, has been sufficiently answered in the Harrison case, supra." (384 S.W.2d at 476).

20. It is of interest to note that Judge Garza never did dismiss the case in spite of all his talk about not having *in personam* jurisdiction. See Rozell v. Kaye, (S.D. Tex.1967) 276 F.Supp. 392, which shows that he eventually transferred the case to the Middle District of Florida.

Ball Construction Co., (N.D.Iowa, 1965), 237 F.Supp. 965.

But Judge McManus did not anticipate that the Iowa courts were going to recognize the "distinction" between an "implied consent" statute and a "single act statute." That "distinction" was later recognized by the Supreme Court of Iowa, over the sharp dissent of two judges, in Krueger v. Rheem Mfg. Co., (Iowa Sup.Ct.1967) 149 N.W.2d 142, in which the same 1963 Iowa "implied consent" statute construed by Judge McManus was held to apply only prospectively.

. The majority opinion in *Krueger* conceded at page 147 that it agreed that "the legislature could, if it so desired enact a 'long arm' statute which would be wholly procedural and could be applied retroactively without violating the constitutions of the United States or State of Iowa." But the opinion stated that "the fact that such statute could be enacted does not aid plaintiff here" because the legislature "chose to adopt a substituted service statute * * * clearly based on the fiction of implied consent." Ibid. Accordingly, and based solely on the recognition of the "distinction" between the two types of statutes, the 1963 Iowa "implied consent" statute was given only prospective application.

The Supreme Court of Iowa, however, made very clear in *Krueger* that the language it had used in *Hill* should not be considered as indicating that it thought that "any type of 'long arm' statute could

not operate retrospectively." Indeed, that court stated at page 148 if any of *Hill's* language did so indicate "we recede from that position and recognize that certain 'long arm' statutes can be solely remedial and, if the legislature so intends, may operate retroactively."[21] It is quite apparent from the language in *Krueger* that had the Iowa legislature passed a "single act" statute which based jurisdiction on the same grounds as did Missouri's Section 506.500 rather than enacting another "implied consent" statute, acceptance of the "distinction" recognized in *Krueger* would have required the retrospective application of such a "single act" statute. We believe that the Missouri courts, consistent with the rationale of the later Iowa cases applied to the Iowa case upon which *State ex rel. Clay Equipment Corp.* was based, would recognize the authority of *State ex rel. Clay Equipment Corp.* is to be limited solely to the "implied consent" type of statute and that the rationale of the early *Hill* case in Iowa no longer can be considered a valid precedent for refusing to apply a "single act" statute retrospectively in accordance with the increasing and now almost overwhelming weight of authority.

Chrischilles v. Griswold, (Iowa Sup. Ct.1967) 150 N.W.2d 94, shows that Iowa apparently is in the process of going further than merely distinguishing its early *Hill* case. While three judges in that recent case, with one judge concurring only in result, held that *Krueger* would not be overruled, Judge Stuart,

21. Justice Rawlings in his dissent stated: "the agency concept employed by those authorities cited in the majority opinion, stemming from the designation of the Secretary of State as a process agent is, in my humble opinion, mere fiction. It changes the procedural aspect of the situation not one bit. To hold otherwise is to indulge, in part at least, in the additional fiction that a defendant foreign corporation would not have shipped products into the state or would not have contracted with an Iowa resident, had the legislative enactment here involved been then in existence." [Id. at 148]. In one of the rare instances in which policy considerations have been articulated in cases

such as this he added that in light of legislative silence on the subject he would apply the statute retrospectively because "the self-evident intendment of the law is to correct an apparent evil by providing injured or damaged Iowa residents a local forum and a constitutionally adequate method by which to effect process rather than compel them to seek redress, at additional cost and inconvenience, in some remote jurisdiction." [Ibid]. As we will note later, the Supreme Court of Missouri has expressed its agreement with this principle in State ex rel. Le Neve v. Moore, (Mo.Sup.Ct. en banc 1966) 408 S.W.2d 47n at 49.

the author of *Krueger,* joined the two judges who had dissented in *Krueger* and, in writing on their behalf in a dissent which seems destined to become the majority Iowa view, said:

> Implied consent is a fiction. The legislature could base the fiction on the commission of the tort as well as the doing of negligent acts. The majority by looking for some conduct on defendant's part upon which to base the implied consent is making the consent more akin to one implied in fact than one raised in law by statutory enactment. This would have been necessary when the United States Supreme Court held the fiction [of] implied consent was necessary to confer jurisdiction. This is no longer the case. McGee v. International Life Ins. Co., 355 U.S. 220, 224, 78 S.Ct. 199, 201–202, 2 L.Ed.2d 223. I believe the majority opinion gives more substance to the implied consent theory than it is entitled to [Id. at 102].

We believe that the Supreme Court of Missouri would give appropriate recognition to the developments in Iowa law since *State ex rel. Clay Equipment Corp.* was decided and that it would not attempt to rule that Section 506.500 should be applied only prospectively on the theory that the *Hill* case, relied upon in *State ex rel. Clay Equipment Corp.,* can now be said to support such a determination. We think the very least the Supreme Court of Missouri would do would be to adopt the same "distinction" recognized in the later Iowa cases and that it would accordingly hold that Section 506.500 should be applied retrospectively because it is in fact a "single act" statute rather than the type of "implied consent" statute that was construed in *State ex rel. Clay Equipment Corp.*

The Supreme Court of Missouri has been as insistent as that of Iowa in regard to the necessity that the State legislature perform its duty. See, for example, State ex rel. Mercantile National Bank at Dallas v. Rooney, (Mo.Sup.Ct. en banc 1966) 402 S.W.2d 354. The controlling difference between the two states at the present time is that the Missouri legislature has acted appropriately and the Iowa legislature has not.

### VIII

The Supreme Court of Missouri has dealt very gingerly with its 1963 decision in *State ex rel. Clay Equipment Corp.* Neither its holding nor its rationale has been applied in any later case. It has been distinguished in instances in which its rationale apparently could have been applied. Indeed, the juridical treatment given that case indicates that neither it nor its rationale will be followed in any subsequent case.[22]

Section 351.630, the implied consent statute involved in *State ex rel. Clay Equipment Corp.,* has been twice considered by the Supreme Court of Missouri since the decision of that case. In the first case, State ex rel. Pressner and Company v. Scott, (Mo.Sup.Ct. en banc 1965) 387 S.W.2d 539, the court held that subsection 3 of that statute was unconstitutional under the principles stated in Wuchter v. Pizzuti, 276 U.S. 13, 48 S.Ct. 259, 72 L.Ed. 446 (1928), and other applicable cases. In the second case, Jackman v. Century Brick Corporation of America, (Mo.Sup.Ct., Div. 2) 412 S.W.2d 111, the court considered a 1965 amendment to what formerly was subsection 3. The court not only held the new subsection constitutional but avoided most of the practical impact of *State ex rel. Clay Equipment Corp.'s*

---

**22.** The question of whether *State ex rel. Clay Equipment Corp.'s* rationale may be followed is of real importance because Section 506.500 is broad enough for use in serving foreign corporations as well as individuals and such corporations might still be subject to service under a retroactively applicable Section 506.500 whereas they would be immune from extra-territorial service under the prospectively construed statute involved in *State ex rel. Clay Equipment Corp.* Obvious questions of statutes of limitations would arise in such cases but so would questions of tolling. Such questions, of course, are not here presented but the importance of the principal question stated is obvious.

prospective only construction by holding that the 1965 amendment related back to the original 1961 act and that therefore the court was not called upon to consider any problem of retroactivity for the reason that the torts involved in the particular case presented were alleged to have occurred subsequent to 1961.[23]

It therefore became settled by the *Jackman* case, decided in 1967, that after a considerable number of unsuccessful legislative efforts, *in personam* jurisdiction over foreign corporations could validly be acquired by a Missouri court in regard to torts allegedly committed in this state.[24] However, the difficulties that the Missouri legislature experienced from 1961 on in drafting a valid long-arm statute for the principal benefit of Missouri plaintiffs did not escape the attention of either the bench or the bar of Missouri. The history of legislative activity prompted by the attention focused on the problem is significant data that must be considered in determining what the probable view of the Missouri courts in regard to what the Missouri legislature intended to accomplish by its enactment of Section 506.500 in 1967.

Chief Justice Eager in the *Scott* case directed attention to McGee v. International Life Insurance Co., supra, noting that the Supreme Court of the United States decision in that case was "an illustration of the ever-shrinking concept of the standards required for outstate service of process." 387 S.W.2d at 543. He further noted "the possibility of future legislation" and accordingly directed attention to "a well written article * * * in 31 University of Kansas City Law Review 292 * * * concerned largely with the constitutionality of the statute as a means of acquiring jurisdiction over a nonresident." [25]

In State ex rel. Mercantile National Bank at Dallas v. Rooney, (Mo. Sup.Ct. en banc 1966) 402 S.W.2d 354, the Supreme Court of Missouri made clear that it was the duty of the Missouri legislature, not that court, to write the statutory law of Missouri. Chief Justice Storckman pointed out that "any change in the rule that service of process beyond the territorial jurisdiction of the court is ineffective to confer jurisdiction *in personam* over the person served is dependent on valid legislative action." Id. at 357. The court in *Rooney* evidenced complete familiarity with the "minimum contacts" rule declared by the Supreme Court of the United States case, again citing and discussing International Shoe Co. v. State of Washington, supra, and McGee v. International Life Insurance Co., supra.[26]

---

**23.** The trial judge, of course, was reversed for having read *State ex rel. Clay Equipment Corp.* too broadly when he sustained a motion to quash and to dismiss on the theory that the rationale of that case required the court to hold the statute be prospective only from 1965. As we have noted, the Supreme Court of Missouri avoided a direct confrontation in regard to whether *State ex rel. Clay Equipment Corp.* had been correctly decided in 1961. The comment entitled: "Expanding permissible basis of jurisdiction in Missouri; the new long arm statute," 33 Mo.L.Rev. 248 at 261, intimates that *Jackman* may have overruled *State ex rel.* Clay Equipment Corp. sub silento.

**24.** This Court sustained jurisdiction acquired under Section 351.630 even before the 1965 amendment. See Chief Judge Becker's published opinion in Higgin-

botham v. United Iron and Metal Company, (W.D.Mo.1964) 228 F.Supp. 513.

**25.** That article stated that it placed "substantial reliance" on Developments in the Law: State-Court Jurisdiction, 73 Harv. L.Rev. 909 (1966). The latter article contains one of the best collections of material to be found in the literature.

**26.** The analysis and discussion of those cases in *Rooney* clearly demonstrated that the strictures implicitly placed on the Supreme Court of Missouri by Professor Anderson in his article, "Personal Jurisdiction Over Outsiders," 28 Mo.L. Rev. 336, 384 (1963), were both premature and inaccurate. The fact that Missouri did not have a satisfactory procedure for acquiring *in personam* jurisdiction over nonresidents until the Missouri legislature passed Section 506.500

The *Rooney* case properly emphasized that the principles established in those Supreme Court of the United States cases could not be applied because "this state has no legislative enactment purporting to provide that the sort of contacts relied on by the respondents would constitute grounds for acquiring jurisdiction over a nonresident such as was provided by law in *International Shoe, McGee,* and other similar cases." Id. 402 S.W.2d at 358. Chief Justice Storckman forcefully reiterated for those who should have been listening what had been said by the Supreme Court of Missouri twelve years earlier in Harris v. Bates, (Mo.Sup.Ct.1954) 364 Mo. 1023, 270 S.W. 2d 763, 768. He stated that "the court cannot supply that which the legislature has, either deliberately, or inadvertently, or through lack of foresight, omitted from the controlling statutes."[27] Id. 402 S.W.2d at 362.

The December, 1967 issue of the Journal of the Missouri Bar shows that the Supreme Court of Missouri's plan for

in 1967 cannot fairly be said to be the fault of the Supreme Court of Missouri. The purported reputation of the Supreme Court of Missouri for judicial conservatism dies a hard death. The otherwise excellent comment in 33 Mo.L. Rev. at 251 states "it is incumbent upon the Missouri courts to look to the interpretation of similar statutes by our sister states. Unfortunately, the effort to liberalize jurisdiction over nonresidents may be frustrated by the overly conservative interpretation given to *International Shoe* by the Missouri courts in the past. Professor Anderson's article is the sole supporting authority cited. That court, as all courts, can only construe statutes as written by the legislature; it can not perform legislative tasks exclusively delegated to the Missouri General Assembly.

We recognize that Chief Justice Storckman quoted Sections 22 and 23 of the Restatement of the law: Judgments (1942) in the *Rooney* case to emphasize the necessity that the legislature and not the courts must act. The Restatement of Judgments was published in 1942, long before the 1957 decision of the Supreme Court of the United States in McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed. 2d 223 (1957). The comment in 63 Columbia L.Rev. at 1106–7 points out the conflict between the statement of the older concept and that stated in *McGee*. The commitment that the Supreme Court of Missouri has made to the modern view in Slivka v. Hackley (Sup.Ct.Mo.), 418 S.W.2d 89 at 91, convinces us that the principles stated in the Restatement of Judgments in 1942 will not be considered controlling by the Supreme Court of Missouri today. The Missouri courts have consistently followed the most recent positions stated by the American Law Institute. One cannot read Topic 1 of Chapter 3 of Part I of the Proposed Official Draft of the Restatement of the Law (Second): Conflicts of Laws (1967), without recognizing the impact that *McGee* has had on that body. The foreword to the Proposed Official Draft states that "many new developments" occurred during even the last two of the thirteen years that tentative drafts were under consideration and stated, as an example, that "in dealing with judicial jurisdiction, § 36 now flatly states that a State may assert such jurisdiction over an individual who has done or caused to be done an act in the State as to any cause of action in tort arising from the act."

Frequent references are scattered throughout the Proposed Official Draft to support the proposition that "due process does not prevent the retroactive application of such a statute [referring to a single act long-arm statute] that arose prior to its enactment. See McGee v. International Life Insurance Company, 355 U.S. 220 [78 S.Ct. 199, 2 L.Ed.2d 223] (1957)," [Ibid. at 159, 162 and 194, for examples].

27. See also Judge Finch's concurring opinion in which he flatly stated that "the need for remedial legislation is evident." Cf. Judge Holman's dissent which took the position that Missouri Civil Rule 52.12(a), V.A.M.R., was sufficient under the circumstances to acquire *in personam* jurisdiction in the particular case before the court.

For reasons that have not been articulated, the Supreme Court of Missouri, contrary to the practice in the federal courts and those of some other states, has elected to await legislative action in regard to extraterritorial service of process rather than exercise the rule-making power delegated it under the Missouri Constitution. See Section 5, Article V of the Missouri Constitution. See Lumbermens Mutual Cas. Co. v. Bab-

appropriate legislative action did not go unheeded. The Committee Reports of the Missouri Bar for 1966–1967 (23 J. Mo.Bar 569, 572 (Dec., 1967)) show that the Subcommittee on Uniform Process of the Committee on Civil Practice and Procedure had already completed a study which revealed that there were no less than forty-nine special classifications in the Missouri statutes concerning service of process. Attention was also directed in the preliminary committee report to proposed legislation that would expand the service of process.

Senate Bill No. 130, which eventually became Section 506.500, was discussed by Senator William B. Waters, Majority Floor Leader of the Missouri Senate, in an article published in the October, 1967 issue of the Journal of the Missouri Bar. Senator Waters, a distinguished and experienced Missouri lawyer, made clear that the Missouri legislature had at long last done its homework, undoubtedly aided by the suggestions made in the opinions of the Supreme Court of Missouri to which we have referred and by the work of the committees of the Missouri Bar which have been noted, Senator Waters stated that Senate Bill No. 130 had been drafted to avoid the constitutional difficulties that earlier "implied consent" statutes had encountered in the Supreme Court of Missouri and that the Missouri legislature had expressly intended to follow the lead of the State of Illinois, a state in which a single act

statute had been held to be both constitutional and retroactive.[28] Senator Waters stated:

Senate Bill No. 130 is another effort to overcome any constitutional objections to broadening our laws for the service of process and taking personal judgments against nonresidents. This bill provides that any person, firm or corporation, resident or nonresident, who transacts business, makes a contract, commits a tort, owns or possesses real estate or contracts to insure in this state submits himself or his personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the foregoing acts. It requires the actual service of process on any such person outside the state, or if a corporation, upon a managing officer who shall be designated as the registered agent by such corporation in that foreign state. The process shall be served by an officer from the court where the nonresident resides. Where jurisdiction over a nonresident is acquired in accordance with these provisions, it states the Missouri court shall have the power to render a personal judgment against such defendant. * * * *This law was represented as being virtually identical to a similar law adopted by the State of Illinois which, it is said, has been held to be constitutional.* (Emphasis ours). [23 Mo.B.J. 455].[29]

cock & Wilcox Co., (D.Mont.1963) 34 F.R.D. 515, for retrospective application of a Montana rule promulgated in a manner similar to the promulgation of the Federal rules.

28. See Nelson v. Miller (Ill.Sup.Ct. 1957), 11 Ill.2d 378, 143 N.E.2d 673. Senator Waters did not specifically mention the retroactive application of the Illinois statute. It cannot be overlooked, however, that Nelson v. Miller not only declared the Illinois statute to be constitutional; that case also established that the Illinois single act statute was to be applied retroactively. It is difficult to believe that one could read Nelson v. Miller without learning both aspects of that opinion.

29. See also Hess and O'Sullivan, The New Missouri Long Arm Statute, 24 J.Mo. Bar 104 (March, 1968), wherein it is stated "the 1967 Session of the Missouri General Assembly enacted Senate Bill No. 130, 'An Act Authorizing Service of Process Outside this State in Certain Situations.' The new statute differs from the draft at one time considered by the Missouri Bar which had been patterned after the 'Uniform Interstate and International Procedure Act.' Instead, the act largely follows the Illinois 'long-arm' statute."

Nelson v. Miller, supra, is cited several times in that article.

See also 33 Mo.L.Rev. at 248–249 which states that "the construction of the Il-

It is perfectly clear that the Missouri legislature knowingly intended to enact entirely new and essentially different procedures for the acquisition of *in personam* jurisdiction over nonresidents when it enacted Section 506.500 and that it consciously followed the form adopted by her Sister State of Illinois which had successfully withstood constitutional attack.

## IX

 Defendant Wise recognizes the almost universal rule that "a statute is presumed to be adopted by a borrowing state in light of the construction placed thereon by the other state's courts." But defendant Wise argues that "there is an exception to this presumption where it would be inconsistent with or contrary to the spirit and policies of [the borrowing state's] own laws and practices." It is reasonable to assume in light of what has been stated that those interested in the patterning of Missouri's long-arm statute on the Illinois statute were familiar with Nelson v. Miller; indeed, it would be unreasonable to assume the contrary.

That leading case is cited and discussed in all of the legal literature to which we have referred. The University of Kansas City Law Review article to which the Supreme Court of Missouri directed attention in the *Scott* case based its discussion on "the Illinois type" statute, in contrast with "the Vermont or 'implied consent' statute," stating that the former covers "nonresident individuals, partnerships and corporations in tort, contract, property and most other general actions known to the law" whereas "the Vermont type is confined to contracts and/or torts and generally couched in language whereby the non-resident is deemed to have impliedly consented to be sued in the forum state and to have a state official appointed as his agent for the reception of service of process." 31 U.K.C.L.Rev. at 295. Nelson v. Miller is cited and quoted from numerous times in that article and it is truly inconceivable that any Missouri

court which makes even cursory study of the subject would fail to conclude that the Missouri legislature was familiar with that case. The fact that the Chief Justice of the Supreme Court of Missouri directed specific attention to the Kansas City Law Review article in which Nelson v. Miller is cited and discussed cannot properly be ignored by this Court.

The nonresident individual defendant in Nelson v. Miller contended that "the new provisions of the statute cannot be applied to him because the cause of action arose before the effective date of the provisions authorizing extraterritorial service on nonresident defendants." [143 N. E.2d at 675]. Justice Schaefer of the Supreme Court of Illinois disposed of defendant's contention based on the Federal constitution as follows:

Insofar as this claim is based on the Federal constitution it is without merit. Sections 16 and 17 do "not extend either to destruction of an existing cause of action or to creation of a new liability for past events." Cohen v. Beneficial Industrial Loan Corp., 1949, 337 U.S. 541, 554, 69 S.Ct. 1221, 1229, 93 L.Ed. 1528; see also Ex Parte Collett, 1949, 337 U.S. 55, 71, 69 S.Ct. 944, 93 L.Ed. 1207; cf. Federal Rules of Civil Procedure, Rule 86, 28 U.S.C.A. [Ibid].

Insofar as defendant's contention was based on Illinois law the court, 143 N.E. 2d at page 676, reiterated what it had earlier held in Ogdon v. Gianakos, (Ill. Sup.Ct.1953) 415 Ill. 591, 114 N.E.2d 686, 690:

The law applicable in the State of Illinois is that there is no vested right in any particular remedy or method of procedure, and that, while generally statutes will not be construed to give them a retroactive operation unless it clearly appears that such was the legislative intent, nevertheless when a change of law merely affects the remedy or law of procedure, all rights of action will be enforceable under the new procedure without regard to whether

linois long-arm statute is particularly pertinent since the Missouri statute was

consciously patterned after the Illinois statute."

they accrued before or after such change of law and without regard to whether the suit has been instituted or not, unless there is a saving clause as to existing litigation. [Ibid at 676].

In specific regard to the new Illinois single act statute, the Court held in Nelson v. Miller that:

As in the *Ogdon* case, the statute before us * * * "merely establishes a new mode of obtaining jurisdiction of the person of the defendant in order to secure existing rights, which are unaffected by this amendment." Retrospective application of such a statute creates a problem only if that application operates unfairly against a litigant who justifiably acted in reliance on some provision of the prior law. It is difficult to imagine such a case insofar as section 17(1) (b) is concerned. [Ibid at 676].

In light of what the Supreme Court of Missouri en banc said ten years ago on the subject of nonresident motorist long-arm statutes in State ex rel. Sullivan v. Cross, (Mo.Sup.Ct. en banc 1958) 314 S.W.2d 889, 897, it is difficult to detect any differences in the spirit and broad policies of Missouri and Illinois in regard to the establishment of procedures which permit the acquisition of *in personam* jurisdiction over nonresidents who cause injury to residents of this state. Judge Eager, speaking for a unanimous court in State ex rel. Sullivan v. Cross, stated:

The vast public interest inherent in the use of our highways and in the casualties flowing therefrom, certainly justifies the classification which permits suits against the nonresident motorist; in order to make this remedy fully effective the legislatures of Missouri and of sundry other states have extended the jurisdiction to cover the legal representatives of such motorists. Our statutes on this subject constitute one comprehensive system enacted for the relief of an evil directly affecting the public safety and welfare. [314 S.W.2d at 897].

Nelson v. Miller determined that the rationale of its Illinois decisions which uphold that state's nonresident motorist statute was broad enough to uphold the new Illinois single act statute. Judge Schaefer stated:

The social problem resulting from automobile accidents, or as in Doherty [Henry L. Doherty & Co. v. Goodman, 294 U.S. 623, 55 S.Ct. 553, 79 L.Ed. 1097 (1935)] from the sale of securities, may be of greater magnitude than those resulting from other tortious conduct generally; but the determination that the degree of need is such as to call for remedy is to be made by the legislature and not by the courts. The rational basis of the decisions upholding the nonresident motorist statutes is broad enough to include the case in which the nonresident defendant causes injury without the intervention of any particular instrumentality. The legislature may direct its policy to the fact of injury as well as to its probability. Cf. Watson v. Employers Liability Assurance Corp., 1954, 348 U.S. 66, 75 S.Ct. 166, 99 L.Ed. 74. [143 N.E.2d at 679].

Certainly this is but another way of saying, as the Missouri courts have said many times, that the legislature must determine the basis of jurisdiction, not the courts. And in that regard, Nelson v. Miller stated:

Sections 16 and 17 of the Civil Practice Act reflect a conscious purpose to assert jurisdiction over nonresident defendants to the extent permitted by the due-process clause. [Ibid].

It is indeed difficult to believe that the Supreme Court of Missouri would find that the Missouri legislature intended to do anything different when it substantially copied the Illinois statute. It is reasonable to believe that the constitutional difficulties encountered by the Missouri legislature in its efforts to enact a valid Vermont type of "implied consent" statute caused it to abandon legislative efforts based on that type of statute, to make an entirely fresh start,

and to break entirely new legislative ground by adopting an Illinois type of single act statute that had already received constitutional approval in the state of its origin.[30]

Any doubt about the deference the Supreme Court of Missouri would pay to Nelson v. Miller is largely removed by the Supreme Court of Missouri's express acceptance of the principles of that case, as the Supreme Court of Illinois had reaffirmed them in Gray v. American Radiator & Standard Sanitary Corporation, 22 Ill.2d 432, 176 N.E.2d 761, in Slivka v. Hackley, (Mo.Sup.Ct.1967) 418 S.W.2d 89.[31] That case, the case most recently decided by the Supreme Court of Missouri on this point, definitely stated the perspective within which that court will currently approach the type of legal question presented in this case:

> Our review of the authorities need not commence with Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565, which emphasized the traditional aspects of physical jurisdiction over the parties. Rather, it commences with the now celebrated case of International Shoe Company v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95. * * * [I]t is clear that in this day and age a person, natural or artificial, may subject himself to the jurisdiction of a court even though *a capias ad respondendum* may not coerce his physical presence in the forum. * * A defendant over whom jurisdiction is asserted must have had such "minimum contacts" with the state as to render it consistent with "traditional notions of fair play and substantial justice" that he be compelled to defend himself and to respond to any adverse judgment rendered against him. [Id. at 91].

By expressly accepting the Supreme Court of Illinois' determination that the Illinois statute from which Section 506.-500 was patterned, Slivka v. Hackley removes any real doubt concerning the view that the Supreme Court of Missouri will likely take in regard to the constitutionality of the new Missouri statute. Indeed, we know of no reason why the Supreme Court of Missouri will not accept and follow the Supreme Court of Illinois' determination in regard to retrospectivity as readily as it accepted and followed the Supreme Court of Illinois in regard to constitutionality.

Defendant Wise does not suggest why application of the conceded general rule of statutory construction would be inconsistent with or contrary to the spirit and public policy of Missouri. The constitutional difficulties encountered by long-arm statutes in Missouri have arisen, not because of any spirit of judicial hostility, (compare Brooks v. National Bank of Topeka, (8th Cir. 1958) 251 F.2d 37) but simply because the Missouri legislature, time after time, apparently did not exercise the same degree of care and attention as did other of her Sister States.

The Supreme Court of Missouri has never indicated, directly or indirectly, that the Missouri legislature did not possess full power to assert jurisdiction over any and all nonresident defendants to the full extent permitted by the due process of the Federal constitution. Indeed, it has expressly stated that "so far as we are concerned, if the statute does not infringe the due process requirements of the Federal Constitution, there is no reason why it should be held to infringe the same provisions of the Missouri Constitution," State ex rel. Sullivan v. Cross, supra, 314 S.W.2d at 893.

---

30. For recognition that Section 351.630 involved in *State ex rel. Clay Equipment Corp.* is in fact properly classified as "a Vermont type statute," see 28 Mo. L.Rev. at 381 and 31 Kansas City L.Rev. at 298.

31. Slivka v. Hackley, together with State ex rel. M. Pressner & Co. v. Scott, (Mo. Sup.Ct. en banc 1965) 387 S.W.2d 539, are recognized as two cases that might be said to indicate "a possible change of attitude" on the part of the Supreme Court of Missouri in regard to McGee v. International Life Insurance Co., supra.

We know of no case that has ever suggested that a state legislature cannot exercise its full constitutional power to acquire *in personam* jurisdiction over nonresidents because such action would violate some judicially created public policy. It would be most inappropriate for this Court to create any judicial public policy for the State of Missouri in the face of repeated declarations of the Supreme Court of Missouri that it is the duty of the legislature, not the courts, to establish the public policy for Missouri in regard to what procedures should be adopted in regard to the acquisition of jurisdiction over nonresidents of this State.

■ The Supreme Court of Missouri has most definitively stated that it will not limit the retrospective application of a procedural statute unless the Missouri legislature has expressed a contrary intention. Appropriate application of that principle requires that courts apply procedural statutes both retrospectively and prospectively unless the legislature expressly states that a particular procedural statute should be applied only prospectively.

State ex rel. LeNave v. Moore, (Mo. Sup.Ct. en banc 1966) 408 S.W.2d 47, shows that such was the law of Missouri at the time Section 506.500 was enacted. In that case, the Supreme Court of Missouri was required to construe a 1965 amendment to Section 508.010, which added a completely new subsection to the Missouri statutes regulating venue and providing procedures for the statewide service of process. That subsection provided that "all tort actions may be brought in the county where the cause of action accrued regardless of the residence of the parties, and process therein shall be issued by the court of such county and may be served in any county within the state. * * *" The question presented was whether that statute

providing for statewide service beyond the territorial jurisdiction of a circuit court should be applied retrospectively or only prospectively.

The defendant, of course, contended that the rationale of *State ex rel. Clay Equipment Corp.* was applicable because, after all, he was not amenable to the *in personam* jurisdiction of the Circuit Court of Jackson County, Missouri, at the time the cause of action accrued and that therefore the new statute, if applied retroactively, would violate Article I, § 13 of the Missouri constitution as applied in *State ex rel. Clay Equipment Corp.* The Supreme Court of Missouri made short work of that argument. It quoted the conclusory "substantive-procedural" dichotomy as it had been stated in *State ex rel. Clay Equipment Corp.* and said:

> We come then to the questions: (1) whether the statute deals only with procedure; and (2) whether its language evidences a clear intention on the part of the Legislature that it shall operate prospectively only. [Id. at 49].

In reliance upon a summary statement in 41 A.L.R.2d 798, which said that "no cases prohibiting the retroactive application of venue statutes on *constitutional* grounds have been found," the Supreme Court of Missouri held:

> We are of the opinion that a venue statute, as a general rule, is procedural or remedial in character and may apply to a cause of action existing at the time it was enacted, unless the Legislature has expressed a contrary intention. [Ibid].

That determination, of course, predicted and compelled the determination that "Section 508.010(6), R.S.Mo.1959, as amended Laws of 1965, V.A.M.S., may operate retrospectively." *State ex rel. Clay Equipment Corp.* was distinguished and apparently restricted to its particular facts.[32]

32. The Supreme Court of Missouri did not attempt to suggest why the defendant in *Moore* did not have "the legal effect of [his] past transactions" changed just as much as those of the defendant in *State ex rel. Clay Equipment Corp.* Neither defendant in either case was amenable to extraterritorial service of

Judge Donnelly's citation of the annotation in 41 A.L.R.2d 798 and his emphasis on the absence of any *constitutional* grounds prohibiting retroactive application of a procedural statute is significant because that annotation collects the cases in which particular courts, as a matter of statutory construction (as distinguished from application of constitutional principle) have held that venue statutes should only be applied prospectively.

There is, for example, a clear split in authority in regard to the question of whether a venue statute is to be applied retrospectively or prospectively only in regard to actions pending at the time the statute goes into effect. See Section 3 and the cases collected in 41 A.L.R.2d at 801–805.

The Supreme Court of Missouri's emphasis in *Moore* on the absence of any recognized *constitutional* prohibition against retrospectivity puts in focus the full thrust of its express holding in 1966 that all procedural and remedial statutes enacted by the Missouri legislature will in the future "apply to a cause of action existing at the time it was enacted, *unless the Legislature has expressed a contrary intention.*" [408 S.W.2d at 49].

The Missouri Legislature certainly did not express any intention in 1967 that Section 506.500 apply only prospectively. Indeed, it based its stat-ute upon that of Illinois which had been expressly held to apply retrospectively as well as prospectively. We believe that we would act in total disregard of the presumed intention of the Missouri legislature as stated in *Moore* if we should hold that Section 506.500 should be applied only prospectively. Because we believe that the Supreme Court of Missouri would refuse to apply the rationale of *State ex rel. Clay Equipment Corp.* to Section 506.500, and because we believe that court would determine that Section 506.500 should be applied retrospectively in the same manner as the Illinois statute was applied before Section 506.500 was enacted, we shall deny defendant Wise's motions.

Our action in so doing is consistent with what many other federal courts have done in instances in which the same question has been presented by other state long-arm statutes. In addition to the cases heretofore cited, see those cited in 19 A.L.R.3rd 138, and see particularly Metropolitan San. Dist. of Greater Chicago v. General Elec. Co., (N.D.Ill. 1964) 35 F.R.D. 131, in which the Illinois statute upon which Section 506.500 was based was applied retrospectively in a private treble damage antitrust case brought under federal law.[33]

We are convinced that in a future case the Supreme Court of Missouri will, in accordance with the trend of the cases to

---

process before the respective statutes involved in the two cases were amended. The defendant in *Moore* was subject to *in personam* jurisdiction only by reason of the amendment of the statute involved in his case, as was the exact case in *State ex rel. Clay Equipment Corp.* We do not believe it necessary to struggle with the apparent anomaly because of the present availability of service of process on all nonresidents under Section 506.500. Discussion of service on foreign corporations under Section 351.-630 is now quite academic under the present law of Missouri.

*State ex rel. Clay Equipment Corp.* can be said to have served a useful purpose when a broad overview is taken of *in personam* jurisdiction over Missouri nonresidents because that decision and others dealing with Section 351.630 forced the Missouri legislature to approach its task of establishing a sound public policy for Missouri in regard to jurisdiction over all nonresidents in a more careful manner than it had theretofore exercised.

33. Defendant Wise's argument that plaintiffs' causes of action represent actions to recover a statutory penalty or forfeiture and are not actions arising out of the commission of a tortious act, within the meaning of Section 506.500, is based on a tortured reading of Powell v. St. Louis Dairy Co., (8th Cir. 1960) 276 F. 2d 464. Judge Ridge settled that question against defendant Wise's contention in Electric Theatre Co. v. Twentieth Century Fox, (W.D.Mo.1953) 113 F. Supp. 937 at 941–942.

which we have referred, articulate more clearly the fundamental considerations of public policy upon which the Missouri General Assembly acted when it based Section 506.500 on the Illinois statute and that even if it should adhere rather closely to the language of the conclusory "substantive-procedural" dichotomy, it will have no difficulty in placing a "procedural" label on Missouri's new statute.

When one really stops to think about it, it comes as somewhat of a surprise to learn that courts could ever have expressed the notion, absent some clear expression by the legislature, that a statute or rule of court regulating the service of process should have been labeled anything other than "procedural." Provisions for the service of process traditionally have been included in Codes of Procedure enacted by legislatures or in Rules of Procedure promulgated by courts. The Federal Rules of Civil Procedure, for example, make provision for the service of all federal process and were promulgated under an express mandate that "these rules shall not be construed to extend or limit the jurisdiction of the United States district courts or the venue of actions therein." Rule 82, F.R.Civ.P.

The jurisdiction of a particular court obviously is not extended by a statute or rule of court which makes a nonresident amenable to its process. However clear that proposition may be in the abstract, experience has demonstrated that its application to a particular statute or rule of court which has in fact made nonresidents amenable to the extraterritorial service of process has not always been either logical or consistent. But as the principles applicable to the early and now familiar nonresident motorist statutes became clear over a period of time, so have the principles applicable to single act service statutes become established. In the case of the latter the juridical progress has been more rapid for the reason that the questions presented could be and have been determined in light of the principles developed in regard to the former.

It is quite clear at the present time that retrospective application of both service of process and even venue statutes is the applicable rule, absent some declaration of legislative intent to the contrary. No convincing data has been presented that can be said to support a determination that a future decision of the Supreme Court of Missouri will fail to reflect the established trend of the cases dealing with single act statutes. There is every reason to believe that the Supreme Court of Missouri, in accordance with its usual and traditional practice, will consider and decide that Section 506.500 should be applied retrospectively in accordance with the decision of the Supreme Court of Illinois in Nelson v. Miller and other well reasoned cases, both state and federal, to which we have referred.

Because of the anticipated number of cases that undoubtedly will be filed in this Court in which the principles stated will be applied, this memorandum opinion and order was circulated for approval of all the active judges of this Court, whose suggestions and additions have been incorporated into what has been stated. Chief Judge Becker and Judges Collinson and Hunter have authorized me to state their concurrence with the legal principles stated in this memorandum opinion and order and are agreed that such principles will be applied in all future cases in the absence of any contrary decision by the Supreme Court of Missouri.

For the reasons stated, it is

Ordered that defendant Wise's pending motions to dismiss and to quash service of process should be and are hereby denied in all the cases in which they have been filed. It is further

Ordered that if, during the course of pending litigation, the Supreme Court of Missouri should determine that Section 506.500 should be applied only prospectively, this Court will entertain a motion to reconsider the order this day entered.